**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| ALLIANCE OF THE SOUTHEAST, *et al*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 23-1524 (TMD/SEC) |
| UNITED STATES ARMY CORPS OF ENGINEERS, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————————— | ) | |


**<u>DEFENDANTS' REPLY IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 1

ARGUMENT ................................................................................................................... 1

I.     The Corps complied with the public trust doctrine because it uses the submerged public land to promote navigation ......................................................... 1

      A.     Plaintiffs Misinterpret and Misunderstand the Public Trust Doctrine and the Corps' Duty to Maintain Safe Navigation ..................................... 2

      B.     The Corps Did Not Act Arbitrarily When it Reasonably Relied on the District's Real Estate Ownership Claim ................................................. 3

      C.     Plaintiffs' Public Trust Claims Are Time Barred or Lapsed ..................... 6

II.     The Corps Complied With NEPA ........................................................................ 6

      A.     The Corps Reasonably Considered Climate Change Risks ....................... 7

      B.     The Corps Adequately Considered the Cumulative Impacts of the DMDF ...................................................................................................... 8

      C.     The Corps Conducted a Thorough Environmental Justice Review. ........... 9

      D.     The Corps' Purpose and Need Statement is Reasonable ......................... 11

      E.     The Corps Considered a Reasonable Range of Alternatives ................... 11

      F.     The Court Should Disregard Plaintiffs' New Arguments ......................... 14

III.     The Corps Conducted an Appropriate Clean Water Act Analysis ....................... 17

CONCLUSION .............................................................................................................. 20

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abuelyaman v. Ill. State Univ.*,
  667 F.3d 800 (7th Cir. 2011) .................................................. 19

*Assoc. of Pub. Agency Customers v. Bonneville Power Admin.*,
  126 F.3d 1158 (9th Cir. 1997) ................................................ 16

*Bennett v. Spear*,
  520 U.S. 154 (1997)................................................................ 17, 18

*Bonte v. U.S. Bank, N.A.*,
  624 F.3d 461 (7th Cir. 2010) .................................................. 11

*Carroll v. Lynch*,
  698 F.3d 561 (7th Cir. 2012) .................................................. 14

*Chen v. Mayorkas*,
  No. 20 CV 6738, 2021 WL 6752291 (N.D. Ill. Sep. 3, 2021)................................ 18

*Citizens for Smart Growth v. Sec'y of Dept. of Transp.*,
  669 F.3d (11th Cir. 2012) ..................................................... 9, 10

*Cmtys. Against Runway Expansion, Inc., v. FAA*,
  355 F.3d 678 (D.C. Cir. 2004)................................................ 11

*Habitat Educ. Ctr. v. U.S. Forest Serv.*,
  609 F.3d 897 (7th Cir. 2010) .................................................. 16

*Habitat Educ. Ctr., Inc. v. U.S. Forest Serv.*,
  673 F.3d 518 (7th Cir. 2010) .................................................. 15, 16

*Highway J Citizens Group v. Mineta*,
  349 F.3d 938 (7th Cir. 2003) .................................................. 12

*Highway J Citizens Grp., U.A. v. U.S Dep't of Transp.*,
  No. 15-CV-994-PP, 2016 WL 4288995 (E.D. Wis. Aug. 15, 2016)........................ 8

*Hillsdale Env'tl Loss Prevention, Inc. v. U.S. Army Corps of Eng'rs*,
  702 F.3d 1156 (10th Cir. 2012) ............................................. 13

*Ill. Cent. R.R. Co. v. Illinois*,
  146 U.S. 387 (1892)................................................................ 1, 2, 3

*Israel v. USDA*,
  282 F.3d 521 (7th Cir. 2002) .................................................. 4

*Keen v. Cleveland, C., C. & St. L. Ry. Co.*,
  64 N.E.2d 499 (1945) ............................................................ 4

*Lake Mich. Fed'n v. U.S. Army Corps of Eng'rs*,
    742 F. Supp. 441 (N.D. Ill. 1990) ................................................................. 3

*Lincoln v. Vigil*,
    508 U.S. 182 (1993)..................................................................................... 12

*Little Co. of Mary Hosp. v. Sebelius*,
    587 F.3d 849  (7th Cir. 2009) ...................................................................... 4

*Ltd., Inc. v. Robertson*,
    35 F.3d 1300 (9th Cir. 1993) ....................................................................... 12

*Marsh v. Or. Nat. Res. Council*,
    490 U.S. 360 (1989)........................................................................... 15, 16, 17

*Mgmt. Support Servs., Inc. v. Appeals Sols., Inc.*,
    No. 09 C 1937, 2010 WL 748170 (N.D. Ill. Mar. 1, 2010)..................... 17

*Or. Nat. Res. Council Action v. U.S. Forest Serv.*,
    59 F. Supp. 2d 1085 (W.D. Wash. 1999)................................................... 15

*Our Parks, Inc. v. Buttigieg*,
    97 F.4th 1077 (7th Cir. 2024) ..................................................................... 2

*Our Parks, Inc. v. Chi. Park Dist.*,
    971 F.3d 722 (7th Cir. 2020) .................................................................. 2, 3

*Reis v. Robbins*,
    No. 14-cv-63, 2015 WL 846526 (S.D. Ind. Feb. 26, 2015)..................... 14

*Rockford Trust Co. v. Moon*,
    18 N.E.2d 447 (1938) ................................................................................... 4

*Sauk Prairie Conservation All. v. U.S. Dept. of the Interior*,
    320 F. Supp. 3d 1013 (W.D. Wis. 2018) .................................................... 8

*Sauk Prairie Conservation All. v. U.S. Dept. of the Interior*,
    944 F.3d 664 (7th Cir. 2019) ...................................................................... 8

*Sierra Club v. FHA*,
    435 Fed. Appx. 368. (5th Cir. 2011) ......................................................... 13

*Sierra Club, v. FERC*,
    867 F.3d (D.C. Cir. 2017) .......................................................................... 11

*Simmons v. U.S. Army Corps of Engineers*,
    120 F.3d 664 (7th Cir. 1997) ..................................................................... 13

*Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers*,
    255 F. Supp. 3d 101 (D.D.C. 2017) ........................................................... 10

*Star Way Lines v. Walsh*,
    596 F. Supp. 3d 1142 (N.D. Ill. 2022) ...................................................... 4

*Swanson v. U.S. Forest Serv.*,
    87 F.3d 339 (9th Cir. 1996) ................................................................................. 16

*United States v. Sunset Cemetery Co.*,
    132 F.2d 163 (7th Cir. 1942) ............................................................................ 5, 6

*Viswanadha v. Mayorkas*,
    660 F. Supp. 3d 759 (N.D. Ind. 2023) .................................................................. 8

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
    435 U.S. 519 (1978) ................................................................................. 6, 8, 12

*Walsh v. McDevitt*,
    654 F. Supp. 3d 744 (C.D. Ill. 2023) .................................................................. 11

*Wildearth Guardians v. S.M.R. Jewell*,
    No. 2:16-CV-00168-DN, 2017 WL 570749 (D. Utah Feb. 13, 2017) .................... 15

*Wisconsin v. Weinberger*,
    745 F.2d 412 (7th Cir. 1984) .............................................................................. 16

**Statutes**

33 U.S.C. § 1344(e)(1) .......................................................................................... 20

5 U.S.C. § 706(1) ................................................................................................... 15

5 U.S.C. § 706(2) ................................................................................................... 14

5 U.S.C. § 706(2)(A) ............................................................................................... 4

**Regulations**

40 C.F.R § 1508.27(b)(4) (2019) ............................................................................ 20

40 C.F.R. § 1508.27(b)(7) ....................................................................................... 16

**Other Authorities**

Pub. L. No. 91-611, 84 Stat. 1818 (1970) ................................................................ 5

## INTRODUCTION

The Court should grant the Corps' motion for summary judgment because the Corps' decision to vertically expand the already existing Confined Disposal Facility ("CDF") designed to safely store contaminated material that must be dredged from Chicago-area waterways to maintain Congressionally-required navigation depths is reasonable and supported by an extensive record. Plaintiffs' contention that the Corps violated the public trust doctrine fails because both the Illinois General Assembly and the Supreme Court made clear that the Corps' protection of navigation furthers the public trust. Plaintiffs are also incorrect that the Corps' environmental review is insufficient to satisfy the National Environmental Policy Act ("NEPA"). Finally, Plaintiffs fail to undermine the Corps' Clean Water Act ("CWA") analysis. Plaintiffs identify no adequate basis in the record or law for their claims that the Corps acted arbitrarily. Summary judgment should therefore be granted in favor of the Corps on all claims.

## ARGUMENT

**I.      The Corps Complied With the Public Trust Doctrine Because it Uses the Submerged Public Land to Promote Navigation.**

The Corps did not violate the public trust doctrine because the Corps uses the previously submerged public land to promote safe navigation. Defs.' Cross-Mot. for Summ. J. at 9-11, ECF No. 44 ("Defs.' Mem."). The Supreme Court established that: (1) the core purpose of the public trust doctrine is to protect navigation; (2) commercial navigation is in the public interest; and (3) transfers of submerged land rights to support navigation do not violate the public trust. *See Ill. Cent. R.R. Co. v. Illinois*, 146 U.S. 387, 452 (1892). The "public trust doctrine, established in American law by *Illinois Central Railroad Co. . . .* prohibits a state from alienating its interest in public lands submerged beneath navigable waterways to a **private** party for **private** purposes."

*Prot. Our Parks, Inc. v. Buttigieg*, 97 F.4th 1077, 1094 (7th Cir. 2024) ("*POP IV*") (emphasis added) citing *Prot. Our Parks, Inc. v. Chi. Park Dist.*, 971 F.3d 722, 729 (7th Cir. 2020).

Plaintiffs' public trust claim thus fails at several hurdles. The previously submerged land at issue is Lake Michigan's lakebed. AR003855. First, Plaintiffs fail to identify any transfer of the land to a private party. Rather, the Chicago Park District ("the District") retains ownership while the Corps uses the land to dispose of dredge material from within the Chicago Area Waterways ("CAWs") in order to maintain safe navigable depths and improve navigation. *See* AR038069; *see also* Defs.' Mem. 9-11. Second, the Corps, the District and the City of Chicago are all public entities who cost share the vertical expansion project. AR034149; AR034305. Third, Plaintiffs do not seriously dispute that the land at issue is being used for a public purpose. Fourth, the Corps complied with the public trust doctrine because it uses the previously submerged public land "for the improvement of the navigation" and so that the public "may enjoy the navigation of the waters." *See Ill. Cent. R.R. Co. 146 U.S. at 453*.

### A. Plaintiffs Misinterpret and Misunderstand the Public Trust Doctrine and the Corps' Duty to Maintain Safe Navigation.

Plaintiffs fall far short of establishing that a public entity violated the public trust doctrine by using previously submerged lands to promote navigation. They contend that the "Corps conflates its obligation to support navigation and engage in dredging, when necessary, with the separate issue of how and where to dispose toxic-laden materials dredged only once every two years from the Calumet River." Pls.' Combined Mem. in Opp'n to Defs.' Mot for Summ. J. 6, ECF No. 47 ("Pls.' Reply"). Plaintiffs' novel attempt to separate dredging from the unavoidable need to dispose of dredged materials is untethered to the public trust doctrine. Disposal of dredged materials and where to put them is an essential part of maintaining and promoting safe navigation. The Corps cannot dredge without designating a place to safely store the dredged

2

materials. As required by Congress, the Corps regularly dredges certain channels in the Chicago

area to maintain safe navigation pathways. AR034149, AR034187 (citing River and Harbor Act

of 1960, Pub. L. No. 86-645, 74 Stat. 482). Because some of the sediment in these waterways is

contaminated at levels unacceptable for open-water disposal or reuse, the sediment, once

dredged, must be safely contained. The CDF and the vertical expansion solve this problem.

Plaintiffs' contention that the public trust would be better served by recreational uses,

Pls.' Reply 1-2, 10, is irrelevant. Plaintiffs must do far more than establish that a different use of

the land at issue would not violate the public trust doctrine. They must establish that a public

agency's use of public land to ensure navigation violates the doctrine. Here, they cannot do so.

Plaintiffs concede that the Corps has a duty and obligation to maintain and support navigation by

dredging. Pls.' Reply 6. There is likewise no dispute that the vertical expansion project will

protect and sustain commercial navigation. AR034309-15; AR035079-184; AR034160;

AR034227. The Illinois' legislature expressly stated that the land transfer is intended "to further

the public interest and benefit navigation." Illinois Public Act 82-770, Sec. 1-1. Maintaining safe

navigation lies at the heart of the public trust doctrine. *See Ill. Cent RR. Co.*, 146 U.S. at 452;

*Prot. Our Parks, Inc.*, 971 F.3d at 728. Thus, the Corps complies with the public trust doctrine.

### B. The Corps Did Not Act Arbitrarily When it Reasonably Relied on the District's Real Estate Ownership Claim.

Despite Plaintiffs' various assertions that "navigation is not a get out of jail free card to

avoid public trust law," it still cannot demonstrate that the Corps violated the public trust

doctrine. Pls.' Reply 3, 10. Plaintiffs continue to incorrectly assert that the Corps' approval of the

project is unlawful because it allegedly failed to secure the necessary land use rights for the

project area. Pls.' Mem. in Supp. of their Mot. for Summ. J. 13, ECF No. 32 ("Pls.' Mem.");

Pls.' Reply 6. Plaintiffs cannot show that the Corps did not secure the necessary land use rights.

Regardless, Plaintiffs' claims fail because they do not establish that the Corps acted arbitrarily or capriciously when it reasonably relied on the District's real estate ownership claim. *See* 5 U.S.C. § 706(2)(A); *Star Way Lines v. Walsh*, 596 F. Supp. 3d 1142, 1149 (N.D. Ill. 2022) citing *Little Co. of Mary Hosp. v. Sebelius*, 587 F.3d 849 (7th Cir. 2009) (agency decisions may only be set aside under the APA if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law"); *Israel v. USDA*, 282 F.3d 521, 526 (7th Cir. 2002) (review under the "arbitrary and capricious" standard is "highly deferential" and courts must "uphold the action if the agency considered all of the relevant factors and [the Court] can discern a rational basis for the agency's choice.").

Plaintiffs' argument that the 1982 Illinois Public Act 82-770 ("Public Act 82-770") only conveyed the property to the District for a period of ten years, Pls. Reply 7, hinges on a misinterpretation of Illinois law. Plaintiffs' Reply adds the contention that Public Act 82-770 imposed a condition based upon the CDF being filled. Pls.' Reply 9. This is simply not true, and the statute belies Plaintiffs' interpretation.

Any reversionary interests must be explicitly expressed. *See, e.g., Rockford Trust Co. v. Moon*, 18 N.E.2d 447, 449 (1938) ("Even where the deed contains words stating the consideration for or the purpose of the conveyance, they do not, of themselves, render an estate conditional. To create a possibility of reverter, words such as 'for so long as,' etc., should be used to indicate clearly that the estate will terminate upon the occurrence of the named event.") (citations omitted); *Keen v. Cleveland, C., C. & St. L. Ry. Co.*, 64 N.E.2d 499, 503 (1945) ("Words contained in the deed which are merely expressive of the purpose animating the grantor in making it do not limit the estate conveyed." (citations omitted)). There is no specific reversion after ten years or until the CDF is full. To the contrary, the Illinois General Assembly conveyed

4

the submerged land in Lake Michigan *in fee* to the District "for the improvement of certain harbor and park facilities, **in order to further the public interest and benefit navigation**, including the construction, use and maintenance upon such land of a contained spoil disposal facility as contemplated by Section 123 of Public Law 91-611." Ill. Pub. Act 82-770, Sec. 1-1 (emphasis added). And Section 102 states that "the right, title and interest of the State of Illinois in and to the following described land, now or heretofore submerged beneath the waters of Lake Michigan, is hereby quitclaimed and *conveyed in fee to the Chicago Park District,* its successors or assigns." Sec. 1-2. [1] In other words, the Illinois Assembly conveyed a fee interest that explicitly sought to benefit navigation.

The District's actions confirm that the Corps was not arbitrary. The District asserted, based on the 1982 conveyance, that it owns the real estate required for the CDF and vertical expansion. Defs.' Mem. 11-14; *see also* AR034140; AR003860. For the CDF, the District signed a Local Cooperation Agreement with the Corps to "furnish the following Park District-owned lands for construction, operation, and maintenance of the facility." AR003855. In 1982, the District provided a Right of Entry to the Corps "for a period not to exceed ten years or until the Chicago Area Confined Disposal Facility is filled, whichever occurs later."AR003872 (1982 Right of Entry). Based on those rights, the Corps is currently operating the existing CDF. On May 14, 2020, the District informed the Corps that it would be a non-federal sponsor for the vertical expansion project, and that it "has the capability to furnish certain real estate requirements for the project." AR034139-40. Since then, the District has entered into a Project Partnership Agreement for the vertical expansion project and provided the Corps with a Right of

---

[1] A conveyance *in fee* to the Chicago Park District indicates a permanent and absolute tenure in land. *See United States v. Sunset Cemetery Co.*, 132 F.2d 163, 164 (7th Cir. 1942).

5

Entry to construct and operate the expansion, as discussed in the Environmental Impact Statement ("EIS"). AR034324.

Plaintiffs thus fall far short of establishing that the Corps was arbitrary or capricious to rely on the District's representation that it owns the previously submerged land in Lake Michigan. *See id*. The Corps is therefore entitled to summary judgment.

### C. Plaintiffs' Public Trust Claims Are Time Barred or Lapsed.

Plaintiffs fail to fully respond to Defendants' arguments and show that their public trust challenge to the 1982 land transfer is timely. Plaintiffs contend that the Corps "does not have the [necessary land] right[] from the state of Illinois" based on the 1982 statute, Pls.' Reply 6, 7-9, but they bring their claims *nearly 30 years* after the alleged ten-year limitation (in 1992) of the existing facility supposedly expired. *See* Defs.' Mem. 15. Plaintiffs reply that "the CDF was authorized for ten years or until it finally became full" and that they have timely challenged the Corps' subsequent plans. Pls.' Reply 9. But Plaintiffs' entire public trust argument hinges on an alleged violation of the decades old 1982 land transfer. Pls. Reply 6-9. The operative statute contains no reversion for "after ten years or until the CDF is full." *See supra* (I)(B). Plaintiffs cannot evade their original argument – that that Corps has been violating Public Act 82-770 since 1992. Pls.' Mem. 13-14. If Plaintiffs correctly interpreted Public Act 82-770 (which they did not), their claim is stale. And to the extent Plaintiffs rely on the challenge to the 1982 statute for their public trust argument, they are nearly 30 years too late.

### II. The Corps Complied With NEPA.

The Corps took the requisite "hard look" and its extensive environmental review more than satisfied NEPA's requirements. Moreover, Plaintiffs have not met their burden to demonstrate that the Corps did not comply with NEPA, or that it acted arbitrarily or capriciously

when it decided to vertically expand the existing disposal facility in order to safely store contaminated material dredged from Chicago-area waterways.

### A. The Corps Reasonably Considered Climate Change Risks.

Plaintiffs concede that the Corps did in fact analyze climate change risks, and attempts to recast the analysis as falling short of the hard look NEPA requires. Pls.' Reply 12. Plaintiffs' effort to recast their claim is similarly meritless. The Corps took a hard look and analyzed climate change risks where appropriate, dedicated an entire appendix to climate change impacts (Appendix H), and considered the climate change impacts on the lake and potential wave impacts on the proposed facility. AR038094-038116; *see also* Defs.' Mem 18-19.

The record belies Plaintiffs' unsupported contention, Pls.' Reply 12-13, that the Corps did not consider or implement Battelle's or "the public commenters" recommendations. After receiving Batelle's comments on the 2019 Draft EIS, the Corps revised Appendix H of the 2020 Final EIS to discuss the potential that "higher stage wave action" on the berms could result in the need for additional maintenance and repairs. AR038101; AR032235; AR038537 *see also* Defs.' Mem. 16-18. However, the Corps also determined that "waves generated by large storms are attenuated and/or blocked by the outer breakwaters of Calumet Harbor," which results in a relatively calm area inside the breakwater. AR034214. The Corps also analyzed and observed that, even though Lake Michigan was at record high levels, the lake level was still 8 feet below the top of the existing CDF rubble mound dike, and the proposed vertical expansion design included a 20-foot setback and armor stone to protect against waves. AR034372; AR037969-70. Plaintiffs fail to identify evidence that the Corps' climate change analysis requires more study. *See Sauk Prairie Conservation All. v. U.S. Dept. of the Interior*, 320 F. Supp. 3d 1013, 1031 (W.D. Wis. 2018), *aff'd*, 944 F.3d 664 (7th Cir. 2019). As a result, Plaintiffs fall short of

establishing that the Corps failed to take a hard look at climate change risk.

**B. The Corps Adequately Considered the Cumulative Impacts of the DMDF.**

The record shows that the Corps conducted an expansive analysis and fully considered the direct, indirect, and cumulative impacts of the vertical expansion project. AR034288-93; AR038228-69; *see also* Defs.' Mem. 19-22. Plaintiffs fail to show that the Corps did not adequately and fully consider cumulative impacts. Rather than identify a failure to consider materials in the record, Plaintiffs attempt to minimize the Corps' cumulative impact analysis by seeking to introduce extra-record information. Pls.' Reply 12, 14. Plaintiffs contend that the General Iron plant "was widely known in 2018." *Id*. This argument fails for several reasons.

First, Plaintiffs cannot attack the Corps' cumulative analysis based on extra record information. *See Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519 (1978) (stating that judicial review under the APA is limited to the administrative record before the agency at the time of its decision.); *Viswanadha v. Mayorkas*, 660 F. Supp. 3d 759, 767–68 (N.D. Ind. 2023) ("[t]o survive summary judgment under the APA, the plaintiffs must point to facts or factual failings *in the administrative record* that indicate that the [agency's] decision is arbitrary…""). Thus, Plaintiffs' arguments relating to General Iron fail because they rely on extra-record materials that the Court must disregard under well-established APA law. *See e.g.*, *Highway J Citizens Grp., U.A. v. U.S Dep't of Transp.*, No. 15-CV-994-PP, 2016 WL 4288995, at *3 (E.D. Wis. Aug. 15, 2016) (ruling that the court will not take judicial notice of the extra record material and that the "plaintiffs should have filed a motion asking to supplement the record ….; they did not").

Second, if the General Iron plant issue was "widely known and reported starting back in 2018," Pls.' Reply 12, Plaintiffs fail to explain why they did not bring it up in their public

comments or during the designated time for AR disputes. *See* Pls.' Notice of Withdrawal of Mot. to Compel Completion of the Admin. Rec., ECF No. 22.

Finally, even if the General Iron plant was "widely known in 2018," the Corps generally assumed the continuance of "industrial land uses along the river" (AR034289) and "continued application of environmental requirements" AR034288. In the EIS, the Corps noted that "[m]odern waterfront use is almost entirely industrial, consisting of steel mills, rail yards, tank farms, scrap yards, and abandoned factories." AR034225. Plaintiffs have failed to show how the Corps' cumulative impact analysis was flawed when the Corps assumed there would be ongoing industrial use along the waterfront, even if the Corps did not specifically identify General Iron as one of those industries. As a general rule, Plaintiffs have "the burden of showing by a preponderance of the evidence that the agency did not comply with NEPA's procedures." *Citizens for Smart Growth v. Sec'y of Dept. of Transp.*, 669 F.3d at 1203, 1211 (11th Cir. 2012). Plaintiffs have not met their burden here and as such, the Court should grant summary judgment in favor of the Corps.

## C. The Corps Conducted a Thorough Environmental Justice Review.

Plaintiffs also fail to demonstrate that the Corps erred in its environmental justice analysis. The Corps met NEPA's requirements by recognizing and analyzing potential impacts to the EJ community. *See* Appendix K, AR038228-269. The Corps evaluated among other things, the "Potential Pathways of Exposure" and "Avoided Environmental Risks" to the environmental justice community (AR034373; AR034279); the potential impacts to water quality, air, noise, health, and safety and much more (AR034272-87); and the "potential for disproportionate risk of human exposure in environmental justice communities." AR034284. After a comprehensive analysis, the Corps concluded that under the "no action alternative," "[t]here will be no changes

9

to the existing risk of physical exposure to communities;[and] contaminated material will remain unconfined in the environment where it has an increased risk of exposure to boaters, swimmers, recreationalists, and other waterways users compared to confinement in an engineered facility." AR034284. In other words, the Corps found that taking pollutants out of the river and confining them in the disposal facility benefits the community. *Id*., *see also* AR034260.

Plaintiffs provide no adequate support for their assertion, Pls.' Reply 14-15, that the Corps' environmental justice analysis is inadequate. The two cases Plaintiffs rely on are inapposite. In *Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers*, the court rejected the agency's environmental justice analysis because it overlooked risks posed by a potential oil spill, particularly on the Tribe's water intakes and distinct cultural practices. 255 F. Supp. 3d 101, 140 (D.D.C. 2017). The *Standing Rock* court also found that the agency "need not necessarily have addressed that particular issue, but it needed to offer more than a bare-bones conclusion that Standing Rock would not be disproportionately harmed by a spill." *Id.*

Here, the Corps did not ignore any reasonably foreseeable risk to the environmental justice community. Indeed, Plaintiffs do not even attempt to identify a risk that the Corps allegedly overlooked, instead focusing their environmental justice analysis on an alleged delay in creating a new park. Pls.' Reply 15. Also, unlike the agency in *Standing Rock*, the Corps properly considered the environmental justice implications as evidenced in Appendix K. Similarly, in *Vecinos*, the court rejected the agency's analysis for failing to identify the environmental justice community. *Vecinos para el Bienestar v. FERC*, 6 F.4th 1321, 1329 (D.C. Cir. 2021). Here, the Corps identified the environmental justice community within the two-mile buffer along the course of the Calumet River, engaged with the community over the years in trying to develop a DMDF site (AR026799-AR026823), and thoroughly analyzed and discussed

10

impacts to the environmental justice community. AR038228-269; *see also* Defs.' Mem. 23.

Thus, the Corps' environmental justice analysis was reasonable and adequately explained. *See*

*Sierra Club*, *v. FERC*, 867 F.3d at 1357, 1368 (D.C. Cir. 2017) (stating that an agency's

environmental justice analysis must be "reasonable and adequately explained," but the agency's

"choice among reasonable analytical methodologies is entitled to deference")).

> **D.      The Corps' Purpose and Need Statement is Reasonable**.

The Corps' purpose and need statement is reasonable and complies with NEPA because

the Corps was guided by Congress's requirement for the Corps to maintain navigation. The

Corps thus tailored its purpose and need statement for the project to Congress's specific

instructions requiring the maintenance of navigation. *See* Defs.' Mem. 24-25. Plaintiffs fail to

address Defendants' purpose and need statement argument (Defs.' Mem. 24-25), and thus,

concedes that argument. *See Walsh v. McDevitt*, 654 F. Supp. 3d 744, 762 (C.D. Ill. 2023) ("The

general rule in the Seventh Circuit is that a party's failure to respond to an opposing party's

argument implies concession); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010)

("Failure to respond to an argument .... results in waiver[,]" and "silence leaves us to conclude"

a concession). Thus, the Corps is entitled to summary judgment on this issue.

> **E.   The Corps Considered a Reasonable Range of Alternatives**

The Corps met NEPA's requirements by preparing a detailed alternatives analysis and

considering a reasonable range of alternatives. AR034152; AR034244 - AR034248; Defs.' Mem.

25-28. Plaintiffs merely repeat their arguments from their opening brief, Pls.' Reply 16, and thus

fall short of establishing that the Corps failed to examine an adequate range of alternatives.

Defs'. Mem. 25-28. And Plaintiffs offer no adequate support for their contention, Pls.' Reply 11-

12, that the Corps skewed its analysis to reach a predetermined result. Contrary to Plaintiffs'

unsupported assertions, the Corps neither arbitrarily expedited its alternatives analysis nor

predetermined the result of that analysis.

"Again, our review is not of the agency's substantive judgment, but of the sufficiency of the agency's consideration of the reasonable alternatives." *Highway J Citizens Group v. Mineta*, 349 F.3d 938, 960 (7th Cir. 2003). Here, the Corps more than satisfied its obligation to study reasonable alternatives under NEPA. It is well-established that the Corps need not consider in detail "[a]lternatives that are unlikely to be implemented" or "alternatives which are infeasible, ineffective, or inconsistent with . . . basic policy objectives[.]" *Res. Ltd., Inc. v. Robertson*, 35 F.3d 1300, 1307 (9th Cir. 1993) (citation omitted); *Vt. Yankee Nuclear Power Corp.*, 435 U.S. at 551 ("the concept of alternatives must be bounded by some notion of feasibility."). The Corps is entitled to significant "administrative discretion" in feasibility determinations because they are so general. *See Lincoln v. Vigil*, 508 U.S. 182, 198 (1993).

Here, the Corps evaluated a wide array of management measures and placement sites for the dredged sediment. The Corps considered beneficial use, reducing dredging requirements, source reduction, private landfills, sediment remediation technologies, and over 60 potential confined disposal sites. AR034151-53, AR034244-48. Despite Plaintiffs incorrect contention that the Corps did not consider sites outside the 10th ward, the Corps considered more than 60 sites along the river for a confined disposal facility, including 29 sites outside the 10th ward. AR034156–57; AR023511-12. The initial 60 sites were evaluated against nine criteria (size, availability, etc.). AR034157-58. Through this screening process, the Corps identified a final array of five alternatives for further detailed analysis, including the "No Action" plan and four upland sites on the Calumet River. The Corps also evaluated other private landfills (AR034245), and determined that private landfills were not a viable option "due to the increased cost of pursuing private management at the scale of this study and the lack of assured capacity."

12

AR034245; *see also* Defs.' Mem. 25-28. And contrary to Plaintiffs unsupported assertion that the Corps skewed its analysis toward the lakefront site, Pls.' Reply 16, the Corps evaluated each of these impacts. *See* AR34164 (loss of park/open space); AR034377-AR034286 (aesthetics); Defs.' Mem. 25-28, 22-24.

Plaintiffs rely on *Simmons v. U.S. Army Corps of Engineers,* 120 F.3d 664 (7th Cir. 1997), in an attempt to demonstrate that the Corps skewed its analysis to reach a predetermined result, but *Simmons* does not support Plaintiffs' contention. In *Simmons,* the Seventh Circuit held that the agency had crafted a needs statement too narrowly when drafting its EIS for a reservoir project that would serve two water systems because the statement precluded consideration of any alternative that would use more than one source to supply water to both systems. *Id.* at 670. In contrast to *Simmons,* the Corps did not foreclose consideration of any reasonable alternatives. In fact, as established, the Corps thoroughly and fully considered various alternative locations and ultimately chose the vertical expansion of the existing CDF. The Corps examined a reasonable range of alternatives that was reasonably tailored to the need to maintain navigation, and this did not foreclose consideration of reasonable alternatives. *See e.g., Sierra Club v. FHA*, 435 Fed. Appx. 368, 374-375. (5th Cir. 2011).

NEPA does not require an endless examination of alternatives, particularly given the Corps' lack of authority over the areas' landfills. *See Hillsdale Env'tl Loss Prevention, Inc. v. U.S. Army Corps of Eng'rs*, 702 F.3d 1156, 1169 (10th Cir. 2012) ("There is no magic number of alternatives the Corps must consider for its analysis to be acceptable, but the agency must draw the line somewhere"). Despite Plaintiffs' assertions, the Corps met NEPA's requirements here.

13

**F. The Court Should Disregard Plaintiffs' New Arguments.**

The Corps completed an exhaustive analysis on among other things, climate change impacts, cumulative impacts, environmental justice, and a reasonable range of alternatives that took several years and encompasses over 4,300 pages, including appendices and an administrative record of over 38,000 pages. AR034147-038462. Plaintiffs' now assert that this comprehensive analysis must be set aside as outdated and that the Corps must complete a supplemental EIS. Pls.' Reply 15-16. Plaintiffs' argument fails for several reasons.

First, "[n]ew arguments and evidence may not be raised for the first time in a reply brief." *Reis v. Robbins*, No. 14-cv-63, 2015 WL 846526, at *2 (S.D. Ind. Feb. 26, 2015) (citation omitted). "Reply briefs are for replying, not raising new arguments or arguments that could have been advanced in the opening brief." (citation omitted) *Id*.; *see also Carroll v. Lynch,* 698 F.3d 561, 564 n. 2 (7th Cir.2012) (stating that arguments raised for the first time in reply briefs are ordinarily waived)*.* Here, Plaintiffs for the first time, contend that this Court should require the Corps to supplement its EIS because the EIS is "outdated" and "stale," based solely on new regulations and executive orders promulgated after the challenged decision. Pls.' Reply 15-16. They cannot introduce such an argument in a reply brief.

Second, Plaintiffs cannot obtain summary judgment on a claim that they did not plead in their Complaint. Plaintiffs' Complaint alleges only that the Corps' decision to vertically expand the CDF is arbitrary and capricious under the APA, 5 U.S.C. § 706(2). *See* Compl. at 29 and ¶¶ 26, 72-73, 144, ECF No. 1. An action to compel agency action unlawfully withheld or unreasonably delayed is an entirely different species of claim that must be pled under an entirely different section of the APA. 5 U.S.C. § 706(1). "An agency's *failure to prepare* a [supplemental EIS] is reviewed under § 706(1) of the APA, which requires the court to 'compel agency action

14

unlawfully withheld or unreasonably delayed.'" 5 U.S.C. § 706(1); *Wildearth Guardians v. S.M.R. Jewell*, No. 2:16-CV-00168-DN, 2017 WL 570749, at *3 (D. Utah Feb. 13, 2017) citing *Or. Nat. Res. Council Action v. U.S. Forest Serv.*, 59 F. Supp. 2d 1085, 1095 (W.D. Wash. 1999). Here, Plaintiffs do not plead, much less attempt to demonstrate, that the Corps had a clear legal duty to prepare a supplemental EIS but refused to do so.[2]  Plaintiffs' cannot pivot in their reply brief to change the nature of their claim from one alleging that the Corps acted arbitrarily to one alleging that the Corps failed to act.

Third, Plaintiffs' argument fails on the merits. "[A]n agency need not supplement an EIS every time new information comes to light after the EIS is finalized. *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 33 (1989). To require otherwise would render agency decisionmaking intractable, always awaiting updated information only to find the new information outdated by the time a decision is made." *Marsh*, 490 U.S. at 373. An agency may need to supplement an EIS if there "are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts." *Habitat Educ. Ctr., Inc. v. U.S. Forest Serv.*, 673 F.3d 518, 528 (7th Cir. 2010). But "the agency need only supplement an [EIS] if the new circumstance or information is 'significant,' 40 C.F.R. § 1508.27(b)(7), and determining significance is "a factual question requiring technical expertise." *Id.* at 528-529 (citation omitted). Plaintiffs' new supplementation claim fails because they identify no "newly

---

[2] An agency's decision to not supplement an EIS is reviewed under the arbitrary and capricious standard of §706(2). *See Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 375-376 (1989) (rejecting § 706(1) type of review for an agency's decision not to supplement an EIS, and opting instead for a § 706(2) arbitrary and capricious standard); *see also Wildearth Guardians v. S.M.R. Jewell*, No. 2:16-CV-00168-DN, 2017 WL 570749, at *3 (D. Utah Feb. 13, 2017) (a decision not to prepare an supplemental EIS is entitled to deference and cannot be set aside unless it was arbitrary and capricious). To the extent Plaintiffs suggest that the Corps made an arbitrary decision declining to supplement its EIS, Plaintiffs failed to plead that claim as well. Plaintiffs have neither formally requested that the Corps supplement the EIS, nor have they asked and been denied. Plaintiffs cannot obtain summary judgment on a claim they did not plead.

discovered information evidencing a significant change in the environmental landscape." *Id*. at 530.

Rather than identify any new environmental information that could conceivably require a supplemental EIS, Plaintiffs stake their supplementation claim on the EIS's bare age and new policy directives. But simply stating that the EIS is 4 years old is immaterial, as "the passage of time alone" does not require a supplemental EIS. *Assoc. of Pub. Agency Customers v. Bonneville Power Admin*., 126 F.3d 1158, 1184 (9th Cir. 1997). And Plaintiffs do not identify any environmental requirement in the CEQ regulations or Executive Orders that the Corps has not already complied with or how they significantly change the environmental landscape. Regardless, neither new policy directives nor executive orders are newly discovered environmental information. *See e.g.*, *Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 344 (9th Cir. 1996) ("determination that the salmon were in fact threatened did not constitute new information that would show that the timber harvests" would have a significant effect not already considered); *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 609 F.3d 897 (7th Cir. 2010); *Marsh*, 490 U.S. at 373; *Wisconsin v. Weinberger*, 745 F.2d 412, 418 (7th Cir. 1984) (new information must provide a "*seriously* different picture of the environmental landscape such that another hard look is necessary"). Plaintiffs' failure to identify new environmental information is thus independently fatal to their supplementation claim.

Lastly, agencies are not required go back and re-do an entire EIS based on updates to regulations or policies that were not in place when it was making its decision. As a matter of policy, it is counter-productive for agencies to constantly go back and re-do work when new policy or regulation not in place when agency decision is issued. If that is the case, projects will

16

never conclude. *See generally Marsh,* 490 U.S. at 373 ("an agency need not supplement an EIS every time new information comes to light after the EIS is finalized.").

### III. The Corps Conducted an Appropriate Clean Water Act Analysis.

As demonstrated in Defendants' opening brief, the Corps conducted a reasonable Clean Water Act analysis. Defs.' Mem. 28-35. For CWA 404(b)(1) Guidelines purposes, return water from the operation of the vertical expansion itself is covered by Nationwide Permit 16 and the Corps separately conducted a CWA 404(b)(1) Guidelines analysis for the loading dock facility enhancement.[3] *Id.* at 29-32. Then, on an extensive record, the Corps evaluated the vertical expansion, including the loading dock, and made the required finding that it was not contrary to the public interest. *Id.* at 32-35. Plaintiffs' attacks on the Corps' analysis fail to demonstrate that the Corps' evaluation of the vertical expansion violates the CWA.

Plaintiffs begin by undermining the foundation for their APA claims and offering more post-decisional material. *See* Pls.' Reply 18 n.8. Because the Corps will need to obtain certain permits from Illinois EPA before beginning construction, Plaintiffs argue the Corps' decisions "are still in play." *Id.* at 18. But this argument ignores the nature and scope of judicial review under the APA, which is available only for *final* agency actions. *See Bennett v. Spear*, 520 U.S. 154, 175 (1997). If Plaintiffs truly contend that the Corps' decision is not final and the record is still open, they cannot yet bring any APA claim and both their CWA and NEPA claims must be dismissed. But Plaintiffs are incorrect; the Corps' selection of the vertical expansion as documented in the Record of Decision ("ROD") is a final agency action, *see id.* at 177-78

---

[3] Plaintiffs did not respond to Defendants' point that, even if Plaintiffs are correct and the Corps should have conducted a separate or additional alternatives analysis under the CWA, the alternatives analysis the Corps did perform in the EIS satisfies this requirement. Defs.' Mem. 31. Plaintiffs have therefore waived the argument. *See Prac. Mgmt. Support Servs., Inc. v. Appeals Sols., Inc.*, No. 09 C 1937, 2010 WL 748170, at *5 (N.D. Ill. Mar. 1, 2010) ("Where, as here, a party does not respond to an argument raised in a summary judgment brief, it will be deemed a waiver.").

(describing qualities of a final agency action), and the Court's review is therefore "limited to the administrative record," *Chen v. Mayorkas*, No. 20 CV 6738, 2021 WL 6752291, at *1 (N.D. Ill. Sep. 3, 2021). And Plaintiffs identify no requirement in the cited Executive Orders or proposed regulations[4] that would require the Corps to update its CWA analysis. *See supra* at 16-17.

Plaintiffs similarly rely on post-decisional material when challenging the Corps' use of Nationwide Permit 16. First, Plaintiffs note that Illinois EPA added a condition to Nationwide Permit 16 in October 2021 (more than one year after the ROD was finalized). Pls.' Reply 19. That condition specifies that certain projects, like the vertical expansion, will need a case-specific CWA section 401 water quality certification from Illinois EPA. Pls.' Reply, Ex. 3 at 12. Plaintiffs suggest that this new condition undermines the Corps' use of Nationwide Permit 16, but it is irrelevant for several reasons: (1) the condition was not in effect at the time of the ROD; (2) Illinois EPA's decision on a CWA section 401 water quality certification does not change whether the Corps may authorize a project under a nationwide permit – just that a project authorized under a nationwide permit must comply with state-specific conditions; and (3) the Corps plans to resubmit a section 401 water quality certification application to Illinois EPA, Defs.' Resp. to Pls.' Letter, ECF No. 40. Thus the new condition does not alter the Corps' prior conclusion that the vertical expansion met the conditions of Nationwide Permit 16. AR038560. Second, Plaintiffs offer an April 2023 letter (more than two years after the Corps finalized the ROD) from Illinois EPA rejecting the Corps' use of a General Permit to Discharge Storm Water Associated with Construction Site Activities (Permit ILR10) to cover construction of the vertical expansion. Pls.' Reply 19, Ex. 1 at 1. But Plaintiffs do not explain how a State-permitting

---

[4] Plaintiffs cite Corps' regulations proposed in February 2024. Pls.' Reply Br. 18 n.8. But unlike the decision here, those proposed regulations are not yet final.

decision on an unrelated, State-administered stormwater permit for construction activity is relevant to whether the discharge of return water is covered by Nationwide Permit 16, a general permit administered by the Corps for a different activity.

Next, Plaintiffs argue that the District Engineer did not consider site-specific factors in determining whether the discharge of return water was covered by Nationwide Permit 16.[5] Pls.' Reply 19. However, this site-specific evaluation is required only when the District Engineer is reviewing a preconstruction notification, which is not required here. AR026553-54. Regardless, the EIS documents the Corps' consideration of potential impacts to hydraulics and hydrology, water resources and water quality, and aquatic communities, among many other things, including factors specific to the project's location near Lake Michigan. AR034272, AR034277. And, similarly, the ROD documents the Corps' finding that the vertical expansion is not contrary to the public interest.[6] AR038556. Plaintiffs have pointed to no requirement that is unaccounted for in the Corps' voluminous record.

More broadly, Plaintiffs assert that, because the Corps conducted a full EIS rather than an Environmental Assessment (EA), it has per se admitted that the vertical expansion will have significant environmental impacts which cannot be squared with the Corps' analysis of environmental justice or 33 U.S.C. § 1344(e)(1). Pls.' Reply 18-19. The EIS explains that, *after* the Corps published an EA in 2015, "considerable feedback related to potential impacts on the

---

[5] Though Plaintiffs cite it in their opening brief, Pls.' Mem. 31, Plaintiffs did not challenge the applicability of or the Corps' compliance with Nationwide Permit 16 until their combined Response and Reply. The Court should consider the argument waived. *Abuelyaman v. Ill. State Univ.*, 667 F.3d 800, 814 (7th Cir. 2011).
[6] Plaintiffs incorrectly conclude that the Corps exempted the vertical expansion from a public interest review based on its use of Nationwide Permit 16. Pls.' Reply 20. On the contrary, though the Corps considered the public interest review prepared for Nationwide Permit 16 itself as part of its analysis (AR026422-27), the Corps made the finding, supported by the EIS, that the vertical expansion was not contrary to the public interest. AR038556.

local community was received" and "[a]s a result, [the Corps] determined that it was appropriate to complete an [EIS] rather than an EA." AR034160. Indeed, prior to being revised in 2020, NEPA regulations included consideration of the "degree to which the effects on the quality of the human environment are likely to be highly controversial," as one factor in determining if an EIS should be prepared. *See* 40 C.F.R § 1508.27(b)(4) (2019). Finally, 33 U.S.C. § 1344(e)(1) refers to when the Secretary may issue general permits not whether an already-issued general permit applies to a given discharge and is therefore irrelevant to Plaintiffs' argument here.

Importantly, the EIS did not identify any significant impacts from construction or operation of the vertical expansion. The Corps analyzed the environmental consequences of the final alternatives under consideration, AR034271-94, which supports the Corps' findings that the vertical expansion will have only minimal or no effect on various categories, AR038559 (ROD, Table 2). Plaintiffs' argument would effectively penalize the Corps for responding to comments and preparing a more detailed environmental analysis, notwithstanding the results of that analysis. As explained here and in Defendants' opening brief, the Corps analyzed environmental justice in the EIS, *supra* at 9-11; Defs.' Mem. 33, and, on a robust record, made a public interest determination, AR034279-85, AR038228-69, AR038556. That the Corps completed an EIS rather than an EA only bolsters the record in support of the Corps' ultimate determination.

In sum, the Court must limit its review to the administrative record at the time of the specific agency decision, and the record here demonstrates that the Corps is entitled to summary judgment on Plaintiffs' claim that the vertical expansion did not comply with the CWA.

## CONCLUSION

For the reasons discussed above, this Court should deny Plaintiffs' motion for summary judgment, and grant Defendants' cross-motion for summary judgment.

20

Respectfully submitted this 7th day of May 2024.

TODD KIM
Assistant Attorney General
Environment & Natural Resources
Division

/s/ *Esosa Aimufua*
ESOSA AIMUFUA
Natural Resources Section
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 532-3818
esosa.aimufua@usdoj.gov

/s/ *Zoe Palenik*
ZOE PALENIK
Environmental Defense Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202)-353-5625
Zoe.Palenik@usdoj.gov

*Attorneys for Defendant*