**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ALLIANCE OF THE SOUTHEAST, *et al.*,, | ) |
| Plaintiffs, | ) |
| v. | ) Civil Action No. 23-1524 (TMD/SEC) |
| UNITED STATES ARMY CORPS OF ENGINEERS, *et al.*, | ) |
| Defendants. | ) |

**<u>DEFENDANTS' REPLY TO PLAINTIFFS' SUPPLEMENTAL BRIEF (ECF NO. 50)</u>**

# INTRODUCTION

The Seventh Circuit's recent opinion in *Protect Our Parks, Inc. v. Buttigieg*, 97 F.4th 1077, 1082 (7th Cir. 2024) ("*POP IV*") strengthens Defendants' arguments that the Corps' decision to approve a project expanding an existing facility to ensure that the Corps can continue the dredging necessary to maintain Congressionally-ordered navigation was not arbitrary or capricious, and that it complies with the public trust doctrine, the National Environmental Procedure Act ("NEPA"), and the Clean Water Act ("CWA"). Plaintiffs' Supplemental Brief, ECF No. 50, elides *POP IV*'s central relevant point – that the public trust doctrine does not bar actions by public entities such as the Corps to promote public purposes such as navigation. Plaintiffs' supplemental brief, at best, identified irrelevant and unavailing distinctions between *POP IV* and this case and offers nothing to support Plaintiffs' claims that that the Corps violated the public trust doctrine, NEPA or the CWA. Thus, summary judgment in favor of the Corps is warranted.

# PROCEDURAL BACKGROUND

On April 9, 2024, after filing Plaintiffs' Reply Brief (ECF No. 47), Plaintiffs filed a letter to the Court requesting permission "to file a supplemental brief of five pages or less on *Protect Our Parks IV*." ECF No. 48. On April 10, the Court granted Plaintiffs' request and permitted Defendants to file a five-page response. ECF No. 49.

# ARGUMENT

I.  ***POP IV* supports Defendants' arguments that the Corps complied with the Public Trust Doctrine and NEPA.**

In *POP IV*, the Seventh Circuit upheld the dismissal of a lawsuit challenging the federal approvals for the construction of the Obama Presidential Center in Chicago's Jackson Park. *POP IV*, 97 F.4th at 1082. The court ruled among other things, that the plaintiffs failed to demonstrate

1

any violations of federal statutes, including NEPA and the CWA. *Id*. at 1092, 1098. The court found that the federal agencies involved—the Department of Transportation and the Army Corps of Engineers—had properly considered and addressed the potential impacts of the project on the environment, and public parks. *Id*. The court also concluded that the district court "properly ruled that the state law counts [Illinois public trust arguments] had to be dismissed." *Id*. at 1099.

### A. *POP IV* supports the Corps' argument regarding the public trust doctrine.

*POP IV* reinforces Defendants' position that the Corps' use of the previously submerged land to promote navigation, fully complies with the public trust doctrine. The *POP IV* court reiterated that "the public trust doctrine, established in American law by *Illinois Central Railroad Co. v. Illinois*, [146 U.S. 387 (1892),] prohibits a state from alienating its interest in public lands submerged beneath navigable waterways to a private party for private purposes." *POP IV at* 1094. Neither the Corps nor the Chicago Park District ("the District") is a private party. And no public land is being used "for private purposes." To the contrary, the Corps and District are public entities using the land for a public purpose. Moreover, commercial navigation is in the public interest and transfers of submerged land rights to support navigation do not violate the public trust. *Ill. Cent. R.R. Co. 146 U.S.* 387, 452 (1892); *see also* Defs.' Cross-Mot. for Summ. J. at 9-11, ECF No. 44 ("Defs'. Mem.").

Plaintiffs elide *POP IV*'s affirmance that public uses by public entities do not violate the public trust doctrine. They instead focus on an irrelevancy – that the public trust doctrine applies to parks. ECF No. 50 at 4. That recreational purposes are consistent with the public trust does not mean that navigational purposes violate the public trust. To the contrary, preserving navigability lies at the core of the doctrine. *See* Defs.' Mem. 9-11.

2

Plaintiffs also contend that *POP IV* imposes a heightened standard of review for submerged lands. ECF No. 50 at 4. But *POP IV* announces no such rule, and Plaintiffs' arguments exceed the scope of the Court's leave by attempting to reinterpret prior *Protect Our Parks*, decisions that were available prior to the commencement of briefing in this case. ECF No. 50 at 4-5. Most significantly, to the extent that submerged lands are unique, this is because preserving navigation is the core of the doctrine. *See POP IV* at 1094, 1096.

Plaintiffs offer no adequate support to challenge the Corps' contention that transfers of submerged land rights to support navigation do not violate the public trust doctrine. Any transfer of submerged land was to a public entity (the District and the Corps), and the submerged land is used to promote navigation by dredging. The Corps thus did not violate the public trust doctrine.

### B.  The ruling in *POP IV* supports the Corps' NEPA arguments.

In *POP IV*, the Seventh Circuit reiterates that "[t]he only role' for a court in applying the arbitrary and capricious standard in the NEPA context 'is to insure that the agency has taken a "hard look" at environmental consequences.'" *POP IV* at 1092 citing *Highway J Citizens Group v. Mineta*, 349 F.3d 938, 953 (7th Cir. 2003) (alteration omitted). "In other words, NEPA is a process statute, [and]… [a]s we explained in *POP III*, the administrative record shows that the "agencies were very thorough."'" *Id*. The Circuit thus held that the agencies complied with NEPA. *Id*. Plaintiffs' effort to distinguish *POP IV* because it did not involve a major federal action, ECF No. 50 at 1-2, only highlights that the Corps conducted an even more robust environmental analysis in this case. Regardless, the Corps' 4,300 page-long Environmental Impact Statement (based on an administrative record of more than 38,000 pages) was sufficiently thorough to satisfy NEPA. Defs'. Mem. 5.

3

In this case, the Corps conducted an even more robust NEPA analysis than the one that was held sufficient in *POP IV*. *POP IV* at 1093. Instead of conducting only an environmental assessment ("EA") for the vertical expansion of the already existing Confined Disposal Facility ("CDF"), the Corps conducted an environmental impact statement ("EIS")—a more robust and comprehensive environmental review. In the EIS, the Corps took the requisite "hard look" and provided a full and fair discussion of significant environmental impacts. *See* Def. Mem. 17-28. In addition to evaluating climate change impacts, cumulative impacts, and the potential impacts on the environmental justice community, the Corps identified and evaluated a broad array of alternatives to manage the anticipated 1,030,000 cy of dredged material that will need to be removed from the CAWs over the next 20 years. *See id*.

Plaintiffs also seek to minimize the Seventh Circuit's discussion about "deference to the agency's decision-making" as focused only on the "agencies' choice to do an EA." ECF No. 50 at 2. But *POP IV* recognized more broadly that agency decisions implicating agency expertise are entitled to deference. *POP IV* at 1087. Contrary to Plaintiffs' suggestion, this deference extends to issues such as the Corps' determination, based on its expertise, that waves do not threaten the vertical expansion project. *Protect Our Parks, Inc. v. Buttigieg*, 39 F.4th 389, 399 (7th Cir. 2022) (stating that conclusions that implicate substantial agency expertise are entitled to deference).

The remainder of Plaintiffs' brief highlights irrelevant distinctions. The agency's lack of a siting role in *POP IV*, *see* ECF No. 50 at 1-2, meant that its NEPA analysis was sufficient even though the Corps did not analyze any alternative sites. *POP IV* at 1077. Here, the Corps considered more than 60 sites along the river for a confined disposal facility, including 29 sites outside the 10th ward. AR034156–57; AR023511-12. *POP IV*, if anything, suggests that such an

expansive consideration of alternatives also passes muster. Just like in *POP IV*, the Corps satisfied their obligation under NEPA to take hard look at project's likely environmental consequence. *POP IV* at 1092.

### C. Plaintiffs overstate the Court's comments in the status conference.

Finally, Plaintiffs overstate the Court's remarks in a status conference by erroneously stating that the Court ordered a "standstill of construction-related activities in order to maintain the status quo." ECF No. 50 at 2. This Court however has never ordered a "standstill of construction-related activities". The Corps, in the spirit of collaboration and in good faith, agreed to inform Plaintiffs and the Court when it begins construction on the vertical expansion project. Hearing Tr., Doc. 42 at 11-12 (February 6, 2024). Again, *POP IV* does not help Plaintiffs. It recognizes the unremarkable proposition that a plaintiff must prove they are entitled to injunctive relief to obtain such relief. *POV IV* at 1082, 1098. Plaintiffs have not even sought an injunction, much less proved that such an extraordinary remedy is appropriate. Plaintiffs' claim that the Court nonetheless ordered such relief is belied by the record and the transcript.

### CONCLUSION

For the foregoing reasons, the Corps EIS should be upheld, and summary judgment should be entered for Defendants.

Respectfully submitted this 7th day of May 2024.

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division

/s/ *Esosa Aimufua*
ESOSA AIMUFUA
Natural Resources Section
U.S. Department of Justice

5

        P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 532-3818
esosa.aimufua@usdoj.gov


/s/ *Zoe Palenik*
ZOE PALENIK
Environmental Defense Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202)-353-5625
Zoe.Palenik@usdoj.gov

*Attorneys for Defendant*